Thank you, Your Honor. Good afternoon. May it please the court, I would like to save two minutes for rebuttal if possible. My name is Saad Ahmed. My name is Saad Ahmed and I represent the petitioner Mr. Jorge Reyes Afanador in these appellate proceedings. This is an immigration appeal in which the Board of Immigration Appeals found Mr. Reyes removable from the United States on the basis of two convictions for indecent exposure in violation of the California Penal Code 314.1. This petition for review should be granted because indecent exposure under California Penal Code 314.1 was not classified as a crime involving moral turpitude in this circuit at the time Mr. Reyes was convicted. Mr. Reyes had a specific reliance in this court's well-settled precedent in Nunes v. Holder when he was convicted of indecent exposure in 2011 and in 2014. People within the Ninth Circuit's jurisdiction should be able to rely on its opinion. So with regard to that, I can see your argument with regard to 2011 but at the time he was convicted in 2014 of his second conviction, the Cortez Medina case was out from the BIA and so is your argument that even though we know and you know and we've said in Botano's sense that under Brand X this court has to defer to the agency's interpretation that until we actually have a decision doing that, he still has a reliance interest because the BIA decision just doesn't count for purposes of his reliance interest? What's your argument with regard to what's the BIA has actually ruled? Well, your honor, yes, my argument is much broader. Yes, I do believe that just like the Tenth Circuit Court of Appeals would then judge Gorsuch held that until this Court of Appeals defers to the board's interpretation under Brand X, it remains the law of the circuit and we should go with that. But I believe that even under the court's more narrower standard in this court, we believe that Mr. Reyes relied on this, you know, reliance was reasonable because reliance has to be reasonable. It doesn't have to be reasonable. It doesn't have to be reasonable. It doesn't have to be reasonable. In this case, there was a settled Ninth Circuit precedent in 2011 when Mr. Reyes pleaded to 314A. Clearly, it was not a deportable crime at the time. We believe that after Cordes Medina was decided, this, the reliance interest became a little bit more vague. But even then, I believe as a criminal defendant, he should be able to rely on this court's jurisprudence in the criminal proceedings. So we believe that in this case, the Montgomery Ward analysis favors Mr. Reyes. The five Montgomery Ward factors in this case, three of those favor Mr. Reyes because of number one, it's clear that Nunes was well-established precedent of this circuit. And number two, Mr. Reyes was presumed to have relied on that well-settled precedent because in criminal proceedings, this presumption is very strong as Supreme Court also held in several cases. And third, deportation is a big sanction and the hardship clearly weighs in Mr. Reyes' favor. Contrary to what the respondent asserts, Cordes Medina did not diminish the reasonableness of Mr. Reyes' reliance interest in Nunes with respect to the 2014 conviction. This was not the type of case that presented an ongoing controversy between the court and the decision of the board and other circuits. There was no contrary. Excuse me. Could you fill us in on what the state of the law was before Nunes was decided? We know from our opinion in Nunes that there was an unpublished BIA case saying that the 3141 offense was a crime involving moral turpitude. Was that a well-established position of the BIA or was there just that single case? Well, Your Honor, it's my understanding that unpublished decisions of the BIA should not be, you know, they should not be taken into account. Well, that's not really my question. My question is whether there were many opinions by the BIA on that point, whether you know what the, whether that was the well-established opinion of the BIA, whether it was unpublished or not. Your Honor, I'm not familiar with, yeah, I'm not familiar with that, Your Honor. I'm not sure if there were other decisions by the board in which the board made a determination that 3141 was a crime involving moral turpitude, but I can tell you from my own experience advising people of the immigration consequences of their criminal convictions, it was pretty well settled in the from the United States. And therefore, we believe that... Counsel, Judge Ikuda's question is before Nunez. It has to do with before Nunez. So Nunez is, assuming Nunez isn't there, I think her question is, is what was the state of the law? I mean, before the Ninth Circuit's Nunez decision, there was an unpublished decision from the BIA in Nunez that said that it was a crime of moral turpitude. So we have that, but what else was or anything was there? But you don't know? Your Honor, I don't know, but I do believe in Batantos, the court mentioned that before Nunez, there was no circuit. And that was the reason why in Batantos the court found that the reliance interest was diminished because there was no Ninth Circuit president or there was no adverse board decision. So I'm not sure. Yes, I do not know what was the status of this issue before Nunez was decided in 2010. That's pretty important, Counsel, isn't it? Because, I mean, I think you earlier said and Batantos said there was no ongoing controversy, but I guess I'm struggling with how there could ever be an ongoing controversy if there was a published board decision that presumably gets deference from us under Brand X, but we overturned it. There's no controversy after that, because after that, the board basically has to do with what we say. So it seems to me like there would only be an ongoing controversy in a circumstance kind of like here, where the board is issuing one or more unpublished decisions, we end up issuing a decision to the contrary, and then the board effectively overturns us. That sounds like an ongoing controversy to me. Well, Your Honor, the thing is that the general public is not aware of those unpublished decisions, and because they're not aware of those unpublished decisions, the, therefore, their reliance interest is not, I mean, their reliance interest is more. Well, Counsel, if they're aware of Nunez, which we have to, as a constructive matter, pretend like they are, right? So let's say you're an attorney, and you're aware of Nunez, and you're going to counsel your client on that, yeah, feel free to go expose yourself, because you won't get deported for doing that. So if they're aware of Nunez, I mean, wouldn't you be obligated to tell your client, you know, since I'm aware of Nunez, I'm also aware of the fact that the board actually reached an opposite conclusion, an unpublished decision that Nunez overturned, and the board very well could come back in a published decision and say what it's going to say, what it said in the audits. Your position is assuming that kind of the Ninth Word. So why wouldn't you advise your client that way? Well, Your Honor, I would advise my client that before there is any board decision comes, I mean, obviously, if I was the attorney, I would say after the, after Cortez-Medina was decided, I would not have, I would have advised my client not to plead to 314 after Cortez-Medina, but before Cortez-Medina, but after Nunez and before defendant to rely on Ninth Circuit settled precedent in pleading guilty. And we're looking at the consequences of the plea agreement. We're not looking at his actions. So I think that's what the, that what the issue is, that as long as there is clear, well settled precedent in a Court of Appeals, that people should be able to rely on this. I hear what you're saying, but it sounds to me like you've actually said a couple inconsistent things. Earlier you said basically Nunez is what I'm going to advise my clients. And that's what they can rely on until Botano, essentially, is what you're saying until the Ninth Circuit speaks again, notwithstanding Cortez-Medina. But, but what you just said in this actually sounds more realistic to me. And that is once Cortez-Medina comes out, a good lawyer would advise their clients in, in whether to accept the plea or not, you know, the, the, in a public decision. Now the board has said the opposite, and we don't know what the Ninth Circuit is going to do with that. And if that's the case, which I think is what you just said, here he didn't, he didn't plead guilty to his second, the one that counts for purposes of what he was, you know, of, of being removed. He didn't plead guilty to that until afterwards. So why doesn't that mean that he didn't have reliance at the time when it mattered? Well, Your Honor, to answer your question is a two-part question. The first part was that when I was, when you asked me the question earlier, I was just referring to the Tenth Circuit, which is not the law in this circuit. This law, in this circuit, we have the Montgomery Ward analysis. In the Tenth Circuit, you know, in the Tenth Circuit, until the court reverses or defers to the board under Brand X, you know, the BIA decision does not count. But with respect to the court's jurisprudence in this circuit, we do believe that after Cordes Medina was decided, the reliance and interest diminished. But one cannot bootstrap the 2014 conviction, bootstrap the 2011 conviction with respect to the 2014 conviction, because at the time the petitioner pleaded to 2011, the law in this circuit was that this was not a crime involving moral turpitude. So even if the second crime was a crime involving moral turpitude, the first one was not, and there's only one crime involving moral turpitude, which does not make the petitioner removable. By the time that he, by the time he's deciding, you know, it's all about reliance, right? So by the time he's actually trying to decide, should I, shouldn't I plead guilty to this in 2014? He knows at that point that the BIA's interpretation is that his 2011 crime was a crime of moral turpitude. So he's already got one on the books. And so his reliance at that point, he has to decide, do I want to plead guilty to a second one, which will give me that magic number two or not? And so I understand that in 2011, his calculus may have been different, but what matters, it seems to me, is in 2014, when he's actually pleading guilty to that second one, the one that matters for purposes of being removed. But that's your honor. What if we change the, you know, change the facts a little bit? What if he was found guilty by jury? I don't think that anybody would say that you can discount his 2011 conviction, because then there was no reliance. You know, then there would have been, you know, then nobody could say, because what if he had been, what if he had pleaded guilty to another crime involving moral turpitude? Can the government still use the 2011 conviction to say that he was deportable because of two crimes involving moral turpitude? I guess not. That's why, counsel, I kind of think all this reliance stuff is a little bit of a fiction, right? Like, because you're right, in this case, and often it involves pleading, but I mean, you also sort of, I think, have to pretend like he's, like these folks are actually relying on their constructive knowledge of the law when they're actually committing a crime, because you're right, whether they plead or not, they might be found guilty. Just what they're relying on when they commit a crime, the question is what they're relying on is when they plead, which is in this case your analysis. So the difference between, and the sense of at the time of conviction, which is the reason we make the distinction between convicted by a jury, in which case, whether you're right, it doesn't matter, or pleading guilty, in which reliance does matter. That's the sincere analysis. I've got a separate question, and that is, as to the two convictions for indecent exposure that took place before new news, are those on the table in front of us at all? Has the government relied on those as crimes of moral turpitude for purposes of cancellation of removal? Your Honor, government did not rely on the two convictions that predated his admission. No, they did not. And, Your Honor, I just want to point out there was one indecent exposure conviction before he adjusted in 2009, and that was a misdemeanor. It should qualify for the petty offense exception, which means that it did not affect his eligibility for adjustment of status in 2009. In any event, my question really is, with respect to what's in front of us now, the only two convictions that are at issue are the 2011 conviction and the 2014 conviction. That's correct. Yes, Your Honor. I've had difficulty hearing you for a minute, Your Honor. I should speak more closely to the microphone. I understood your answer, then. Listen, we're down to about 15 seconds. You have to reserve two minutes. Why don't we hear from the government, and then we'll make sure. Thank you. We'll give you enough chance to respond. Thank you, Your Honor. I apologize. I think Judge Ikuda has a question. I was just going to mention, Judge Pritchett, your voice is cutting in and out. It's hard to hear you. Sorry. Let me get closer to the microphone. Is that better? I think better. Yes. I apologize. I was too far away from the computer screen on the microphone. I apologize. Okay. Any further questions for Mr. Ahmed at this point? You still have to reserve a couple of minutes, and we'll make sure to give that to you after we've heard from the government. Thank you, Your Honor. May it please the Court, Jonathan Ross for the United States. Good afternoon, Your Honors. I believe there's still some lingering questions from my colleague's portion of the argument, but what I want to focus on initially is that this is a case where you are doing something that you have noticed is amoral, that you have noticed will get you arrested multiple times, that you have noticed if you get convicted again will cause your removal, and even with all of that notice, you still choose to do it. And just as in Betanza's, this Court should resolve this case by applying Cortez Medina, because after that case, Mr. Reyes had fair notice that his 2011 conviction for indecent exposure would be a CIMT. And yet, three short years later, he recidivated. In fact, his misconduct escalated. And critically, it was this second conviction where his removability became locked in. In other words, the agency's application of Cortez Medina is prospective, not retroactive. There was no However, even if my colleague is correct that Cortez Medina is being applied retroactively, unfortunately, he's still, for the reasons already identified by Judge Van Dyke, that still fails on its merits. As this Court stated in Betanza's, retroactivity law is meant to avoid new burdens imposed on where in 2014, when someone hits their second CIMT, and DHS starts pursuing removal proceedings, and they start tallying up a petitioner's CIMTs, it's at that point that it matters. But really, the critical issue here is in 2013, when the law changed, and Nunez, which was the law of the land in this circuit, was being considered by the Board, and the Board issued Cortez Medina, they spoke very clearly that, henceforward, this specific statute, 314.1, would be considered a CIMT. And therefore, from 2013 on, Mr. Reyes had noticed that he was already on thin ice, and yet he acted again by escalating his misconduct. Mr. Ross, I'm with you with respect to the 2014 conviction. I think not only that's the right answer, I think the answer is compelled by our precedent. It's the 2011 plea and conviction that strikes me as where the government has to have some uphill work to do. At the time he pleads guilty in 2011, is he entitled to rely on Nunez? Yes, Your Honor. He absolutely is entitled to rely on Nunez, and in this case, Mr. Reyes got the benefit of his bargain. He was not... But isn't that, then, the end of the case in the sense of whether or not a Montgomery Ward analysis is required? No, Your Honor, and that's because in 2014 is when his removal proceedings got locked in. That's when he was already... That is the point that we look to in identifying how many CIMTs does this petitioner have? Yes and no. As I understand the law, once the Court has decided it's sincere, you get to rely on things for purposes of a guilty plea. And if you plead guilty based upon a certain case law, you're allowed to do that, and the guilty plea then doesn't count against you because you might very well have contested the charge. Your Honor, your point with Saint Sears is well taken. However, this case is different, particularly because at the time, in 2011, when Mr. Reyes committed his felony indecent exposure, which I would like to correct the record, my colleague said that he had... That Mr. Reyes had one charge prior, and again, the government's not pursuing removability based on those earlier charges. However, I still think it's worth noting to clean up the record, by my count, he has three indecent exposure charges or arrests stemming from indecent exposure between 2007 to 2008. That issue aside, at the time, in 2011, when he commits a felony indecent exposure, and presumably, and again, this is a presumption, you know, Mr. Reyes has not shown any actual reliance, but even giving him that point and saying that he relied on the current state of Nunez in making that decision, he received the full benefit of that bargain. In making that decision, the making the decision to plead guilty? I'm sorry? You say he was entitled to rely on Nunez in making that decision. By that decision, are you speaking of the decision to plead guilty in 2011? Yes, Your Honor. Assuming that is what he did, I think that is the argument, as the government understands it, forwarded by Mr. Reyes. Assuming that's what he did, is there any doubt that what he did was wrong? No, he definitely pled guilty in 2011, just to the extent to which he relied on Nunez. However, even with that reliance on Nunez, he was put on notice with the publication of Cortez Medina just months afterwards that the state of the law had changed. And as this court recognized it. With you on that point, that's the 2014. Yes, Your Honor. However, I believe that there's some question with the state of, you know, to Your Honor's point about Saint Cyr and Mr. Reyes's ability to rely on the state of the law. He was able to rely on it. He received the benefit of that bargain. If he went to an immigration attorney, such as his present counsel or the counsel that he had at the time, and received the benefit of that bargain, he was put on notice that this was a case that, to Judge Akuto's point earlier, that was the board had issued unpublished case law on. This circuit had rejected the analysis from the board based on two reasons. Only because of how brief the discussion was involving 314.1. And because of the amount of deference owed to an unpublished one board member decision. That is the background of 314.1 in this circuit. I'm a little confused by your argument. When he pled guilty to the 314.1 offense in 2011, he was entitled to rely on Nunez. That means he was entitled to believe that that offense was not a crime involving moral turpitude for immigration purposes. Now, if he was entitled to rely on Nunez for that rationale, how can we then say subsequently that, oh, well, in fact, we're now going to say he wasn't entitled to rely on Nunez. That sounds like the sort of retroactive application of Fortis-Medina that was warned against. So help me understand what you're actually saying here. Yes, Your Honor. And let me just preface it by going back and saying, really, the government's argument here is that Fortis-Medina applies prospectively because in 2014 is really the relevant inquiry here. This current discussion that we're engaging in really is in reference to Mr. Reyes's argument about retroactive application. And the government's contending that even with retro— Hang on. If Fortis-Medina applies prospectively, that means the 2014 offense that he pled guilty to counts as a crime involving moral turpitude. But if Fortis-Medina is prospective only, then the 2011 offense is not a crime involving moral turpitude. No, Your Honor. Because in 2011, Mr. Reyes wasn't facing any charges. Even if Nunez didn't exist, he wouldn't be facing removability. And that's why it's not the relevant point of inquiry here. But you're saying there was no reliance at that time when he pled guilty in 2011 because there was no removal charge pending at that point. Is that correct? So there were no immigration— Were there any immigration consequences to his 2011 plea? There were no immigration consequences to his 2011 plea. Okay. So when I was looking at that issue, it seemed to me that he would then lose his— In light of his 2008 plea conviction, he would lose eligibility for cancellation of removal and potentially would be removable because it was a felony, a crime involving moral turpitude that was punishable by more than one year. So why are those two immigration consequences not potentially available to Mr. Reyes at that point? Your Honor, I think that we're at a hypothetical now that is— Again, it's DHS who brings these charges of removability and their decision to— You know, there's nothing that I know of sitting here in the appellate context that would have rendered him removable in 2011 based on that one charge. Are you saying there's no reliance unless there's a pending charge? Is that your point? I guess I'm being— Because in St. Cyr, there wasn't any pending removal. It was just that they were eligible for a waiver of inadmissibility, but there wasn't anything pending at the time they pled guilty to an offense. So I guess I'm not understanding your analogy there. Your Honor, the government's reasoning and why— If I can just say it a different way, the 2011 charge really isn't the relevant period of inquiry here, again, because he wasn't facing any actual charges. And so to the extent that the government says that he relied on Nunez, it really is strictly in the hypothetical that— Or in the situation where in 2014, DHS initiates removal proceedings, and that's really what starts these proceedings, what locks in these proceedings. So if we can just peel away some of the extra levels of the hypothetical that I don't really think are relevant or perhaps helpful to this situation. In 2011, even if Nunez was not on the books, Mr. Reyes would still not be facing any charges of removability, at least on CIMT grounds. I think my colleagues are basically— Let's say Nunez was. Let's say Cortez Medina happened in 2010, right? So it's the state of law as it is now. And to make it even easier, Botanos had already happened. So we know that it's a crown bond morphing. I suppose my colleagues— I think what they're kind of getting at, I guess, if you've got something that requires multiple crimes or multiple even steps, I suppose they're saying that somebody could— They're facing their first crime of moral perpetuity, and they're trying to decide whether to plead or not. I guess they're saying, well, you could tell yourself, I know I won't be removed for this, but if I say yes to this, then I suppose it's like when we're speeding, right? I won't get a speeding— I'm not going to get my license taken away for this speeding ticket, but since I like to speed, I might get another speeding ticket and then get my license. I'd better fight this one, because I think that kind of is their position, is that you rely on every— When it's a chain of events, I was arguing later that it's the last one that matters. It seems to me like, well, your position is the last one that matters, because that's the chain that puts the nail in the coffin, so to speak. But they're just saying, yeah, all the nails in the coffin matter, though, right? All of them matter. So what is your answer to that, that every step, you know, in theory, a rational actor at every step could ask themselves, maybe I better not plead guilty to this one, because that'll be the first domino of the two dominoes that need to fall? Thank you for explaining that, and I hope that accurately describes what Judge Okuda was getting at. And I think the response is very straightforward, because in a situation where you are relying on each and every step, you know, it's still— This is, as I said at the inception of this argument, this is still a question about notice and a question about doing something that you know is wrong over and over again and knowing that you have consequences. So regardless of whatever steps he took at that point in time, he still knew very quickly thereafter that things had changed. There had been a fundamental shift. Betonzos clearly says that the law completely changed in the Ninth Circuit. And, you know, if I can use Judge Van Dyke's example, it's at that point that one has the realization, oh, I'm on thin ice right now. I received the benefit of the bargain that I made previously. The government's not seeking to remove me from this felony conviction that I have. However, I know that if I do it again, things are going to be very bad. I'm going to face not only additional criminal charges, but I'm going to face removal from this country as well. Cortez Medina made that very clear. And for that reason, this is someone that should have been acting on their best multiple bites of the apple. The benefit of the doubt on multiple occasions. Before your time expires, let me ask you a question. Would your answer be different if at the time of his plea of guilty in 2011, there would not merely have been prospective immigration consequences because he might in the future commit a CIMT, but there would be immediate immigration consequences in terms of his eligibility for cancellation of removal? Would your answer be different than that? I believe it would, Your Honor, because that, well, I think the result, because what you're really describing is what happened in Betanzos to a degree, where it was the second conviction that he had, which was the 314-1 charge that caused the removal proceedings to begin. Here, it's opposite. And that's what supports the application of Cortez Medina even more so. Any further questions from the bench? I think, as I understood Judge Fudge's question, maybe I'm not quite understanding. I think he's saying that what if, consistent with what I think Judge Okuda was saying, was what if that 2011 conviction would have, in the world we live in today, the post-Cortez Medina world, been independently alone because it was a felony, because it was a big enough conviction, what if that would have been enough to have him removed for that alone? Would that change your analysis if that would have been enough to have him removed alone? Not as a second offense. So he's not, I don't think he's asking if it's a, well, what if it was a big enough single offense that it would have been enough to remove him alone? It may change things for the sole reason that so much about this circuit's case law, about Batonzas, is the extent to which one can rely on the circuit, on the laws of this circuit. And Mr. Reyes could easily look at the state of this circuit's laws and see that after Cortez Medina, he had a very realistic probability that another conviction for 314-1, or any CIMT, would render him removable. So I think that it's a key component, and I don't mean to be giving an indirect answer to Judge Fletcher or to you, Judge Van Dyke. However, I really do think the government thinks that it's a key part of this is that reliance on the state of the law. I don't know if you can indulge me, but I think maybe I can pin this down. Do you think the government right now, ignoring statute of limitations or anything, do you think the government could go back and on that, assuming that what Judge Kudo was saying was correct, that the 2011 offense being a felony and everything would fit into a category where you could be removed just based on the one offense? Could the government go back now and seek to have him removed for that offense alone, under that rationale? I think your answer to that would be no, because that falls in that interstitial space, right? But that's a different thing than when you have, when you're using the two offense way of doing it, and the second offense is after Cortez Medina. And Judge Van Dyke, I think that, I think I do understand, and if I, if the court, if I can just have the court's indulgence to recite my understanding, I think that the better way to look at it, or perhaps another way to pose the question, is let's say that in 2011, Mr. Reyes was facing two charges of felony 314-1, and then the government didn't seek to remove him, as is often the case, until years later. In that situation, yes, it would be entirely different. You know, if he had these two charges right together during the time that Nunez was the law of the circuit, that would fundamentally change things. However, things are different here, where he was on notice because of Cortez Medina, and that, that if he continued with these types of offenses, that he was going to face removability. And again, I acknowledge that I'm over time, I would like just a couple more minutes if the court would indulge me, a couple more seconds just to, just to close. We're not talking minutes, we're talking seconds. Yes, do you have some closing remark? By no means do I want to take any minutes, but if I, just in closing, the United States government and state courts gave Mr. Reyes every benefit of the doubt over and over again, but he kept making the same mistakes. Congress intended for non-citizens who commit these types of serial crimes of moral to be removed. And applying Cortez Medina to this case, just as the court did in Betanzas, will resolve the case fairly and consistently. For this reason, the court should deny the petition for review in this part and dismiss the remaining portions. Thank you. Thank you very much. Mr. Ahmed, you had sought to reserve some time unsuccessfully, given our questions. We took the government time. Why don't we give you, let's put four minutes on the clock. Oh, thank you, Your Honor. Just if, just have a, if I could just get a few moments to answer some of the questions that were raised earlier by Judge Van Dyke as well as Judge Nuna. Your Honor, I would like to point out that if Nuna did not exist in 2011, the petitioner would have been removable from the United States because a crime involving moral turpitude within five years of someone's admission makes that person deportable. So I would like to point out that in pleading in 2011 to indecent exposure, there were immigration consequences associated with it, contrary to what the government counsel is saying now. Counsel, it sounds to me like you got the benefit, your client got the benefit of that bargain because he didn't, the government didn't try to remove him based on his 2011. Here's a question I got for you that I think kind of gets to the heart of a lot of the discussion we were having with the government. What would your position be if the 2011 offense, he had not pled guilty, but had been found guilty? So I think under what Judge Fletcher has been saying, there would not, there couldn't be any reliance in that circumstance because he actually fought it as hard as he could and got convicted anyway. So if the 2011 offense was not a plea, but was a conviction after a jury trial, would your, but then he pled to the 2014 offense, do you think that he would, that your client could still argue some reliance in it? Yes, your honor, I would say that because Supreme Court jurisprudence as well as discourse jurisprudence requires only reasonable reliance, does not require detrimental reliance. As Judge furthermore, in case called Bartalas versus Lynch in 2015, because when it comes to retroactivity, the court looks at whether it was reasonable. Now he met, even if he was found guilty, he might have waived his right to appeal that conviction. So reliance interest would be implicated in either way. So we believe that Nunes was the law in 2000. Let's not, I mean, let's just say that he didn't waive his right to appeal. So I'm trying to say that like, there's no way you could say that he relied on the 2011 one, I guess, under what I'm saying, because we'll make the hypo whatever it is that he fought it as hard as he could, but he was still found guilty. He lost his appeal, et cetera in 2011. Yes, your honor, my answer would still be the same that even if he lost by jury trial, the reliance interest is implicated because Supreme Court jurisprudence requires reasonable reliance, not actual or detrimental reliance for this argument to go forward. Your honor, we think this petition for review should be granted because Mr. Reyes was not convicted of two crimes involving moral turpitude after his admission as a lawful permanent resident. His 2011, his 2001 conviction for indecent exposure should not count as a crime involving moral turpitude for purposes of removability because of his reliance interest in this court's well-settled precedent in Nunes. Cordes Medina came as a complete surprise to Mr. Reyes with respect to his 2011 conviction. At most under the Montgomery Ward test, Mr. Reyes is convicted of only one crime involving moral turpitude, which does not make him removable from the United States as charged. If there are no further questions, I'm done. Okay, thank you. Thank you very much both Mr. Ahmed and Mr. Ross. The case of Reyes-Afanador versus Barr are now submitted for decision and that concludes our argument for this afternoon. Thank both sides and we're now in adjournment. Thank you. Thank you, your honor. The support for this session stands adjourned.
judges: W. Fletcher, Ikuta, Vandyke